## Hassler *versus* Bitting.

*Responsive Answers in Equity, Effect of.—Resulting Trust destroyed by Laches of* Cestui que trust.

· A. by an assignment dated December 14th 1833, on a deed to him, conveyed a house and lot to B. for life, with remainder to three others in fee. In 1857, B. filed a bill in equity alleging a resulting trust in the property as bought with her money, but the proofs on bill and answer failed to sustain her averments: *Held*,

· 1. That she had no resulting trust.

2. That the assignment having been made with her knowledge, she was guilty of *laches* in enforcing her equity if she had any, and that after twenty-four years' delay, she could not be heard in a court of equity, asserting a resulting trust or a breach of trust in a conveyance, in which she had so long acquiesced.

APPEAL from the Common Pleas of *Berks county*, sitting in Equity. ·

This was an appeal by the devisees of Susan Hassler, from the decree of the court below, dismissing a bill in equity filed by her against Daniel L. Bitting. ·

: The bill of complainant was filed May 14th 1857, and set forth, that a certain house and lot of ground, situate in Fourth street, in the city of Reading, was conveyed by deed, dated September 26th 1833, from William Weimer and wife, to Daniel L. Bitting, the respondent in said bill; that said house and lot was purchased for the complainant at her request, and with her money, and that the said Daniel L. Bitting held the same in trust for her; that afterwards, to wit, on the 14th day of December 1833, the said Daniel L. Bitting, and Susannah his wife, executed on the back of said deed, an assignment or declaration of trust for said house and lot, in favour of the said Susan Hassler for life, and after her death, to Jeremiah D. Bitting, Samuel Zieber, Catharine Goss, and Polly Hinnershitz; that said declaration of trust was made without the consent, direction, or authority of the said Susan Hassler, and in her absence, and was the sole act of the said Daniel L. Bitting; that as soon as she was informed thereof, she refused to consent to the arrangement, and the reason it was not altered at the time, was because the said Daniel L. Bitting assured her, that the names in said declaration of trust could at any time be erased, and others inserted, to whom she might desire to convey or devise said premises; that said deed, with the declaration of trust thereon endorsed, was, at the time of filing the said bill, and for a long time before, in her possession, &c.; and praying the court to cancel said declaration of trust, declare Daniel L. Bitting her trustee, and by the

[Hassler v. Bitting.]

decree of said court, compel him to execute and deliver to said complainant, a deed of conveyance for said house and lot.

To this bill the respondent filed his answer July 31st 1857, admitting the purchase of the premises above mentioned, at first for himself—but averred that she afterwards agreed to take it, and refunded the purchase-money to him; that it was made at complainant's request; and denying that the assignment or declaration of trust was executed, without the direction, consent, or authority of said Susan Hassler, and in her absence. The respondent further declared in his answer, that the declaration of trust, endorsed on the deed, was signed, sealed, and delivered, by the direction, with the consent, and in the presence of the said Susan Hassler, who accepted the same, and gave it for safe keeping into the hands of Jeremiah D. Bitting, who is a nephew of the respondent, and in no way related to the complainant; and praying that the bill be dismissed with costs, &c.

Subsequently, on the application of the parties, the court appointed P. S. Filbert, examiner, to take testimony in the cause; and on the 23d of March 1858, Matthias S. Richards, and Isaac Meyers, the subscribing witnesses to both the deed and declaration of trust, were examined on the part of the complainant, and on September 8th 1859, Peter Bitting, a brother, on behalf of respondent.

Mr. Richards testified that he drew the deed and assignment, or declaration of trust, above referred to; that he attested the same, and that they were both acknowledged before him; that he drew the assignment at the instance of Daniel L. Bitting, and went to his house to take Mrs. Bitting's acknowledgment; that Susan Hassler was not present at that time, nor when the instructions were given, or the deed drawn, and that witness "had no communication on the subject with Susan Hassler at all, nor she with him." Isaac Meyers, the other attesting witness, "has no recollection of Susan Hassler being present." Peter Bitting, the respondent's witness, did not testify to anything touching the execution or delivery of the deeds above mentioned; but that Mrs. Hassler had said, she had made the assignment as it was written, had requested it to be drawn, and was satisfied with it. The premises in dispute were occupied by Susan Hassler as her own, or by her devisees, from the time of the purchase in 1833, to the present time.

The complainant died about the 15th day of June 1858, after having made her will, dated January 31st 1857, wherein she devised the premises in dispute to William Breidegam and Polly Hinnershitz (wife of Jeremiah Hinnershitz), who, on November 24th 1858, filed in the said court a bill to revive and continue the

original proceedings, which were revived accordingly March 11th 1859.

On the 27th February 1860, the cause was argued on the bill, answer, and testimony taken by the examiner; and in August following, the court dismissed the bill with costs.

The case was then removed into this court, where the following errors were assigned:—

1. The court erred in dismissing the original bill, and bill of revivor, of the complainants.

2. The court erred in not decreeing the declaration of trust null and void, and cancelling the same.

3. The court erred in not decreeing the execution and delivery of a deed of conveyance to the complainants, by Daniel L. Bitting, the respondent.

*A. G. Green* and *Jacob Hoffman*, for appellants.—The admissions of the respondent clearly show a resulting trust, in favour of Susan Hassler and her devisees: Greenl. Cr. vol. 1, 390, 391; Jackman *v.* Ringland, 4 W. & S. 149; Lloyd *v.* Carter, 5 Harris 216. And a principal duty, imposed by law on a trustee, is " to execute such conveyances as the *cestui que trust* shall direct:" Gr. Cr. Dig. vol. 1, 418.

The first question is one of fact, and its decision depends on the measure of evidence which the court may hold to be necessary to overcome an answer in chancery. The complainant declares under oath, "that the declaration of trust was made *without her consent,* or *direction,* and *in her absence;* that when informed of it, she objected to the arrangement, and that it was the sole act of the said Daniel L. Bitting." This is denied by the respondent, who alleges that, "by the direction, with the consent, and in the presence of the said Susan Hassler, he and his wife signed, sealed, and delivered the said declaration of trust to the complainant." A direct and material issue of fact is presented, and the parties would appear to stand *in equilibrio.* Judge Richards, who drew the assignment, attested it, and took the acknowledgment of the respondent and wife, sustains the allegations in the bill, and swears that he drew it at the instance of Daniel L. Bitting, and at his house; that Mrs. Hassler was not present then, or at any other time, and that he never had any communication with her on the subject. Isaac Meyers, the other attesting witness, has no recollection that Mrs. Hassler was present. The respondent's answer is not supported by any evidence *aliunde.*

It is true that the current of judicial decisions seems to favour the doctrine, that *two* witnesses are necessary to overcome the respondent's answer, on the principle, that the complainant, by

[Hassler *v.* Bitting.]

calling on the adverse party to answer, thereby makes him a witness, and if but one witness is called to sustain the bill, there is witness against witness, and the parties stand *in equilibrio.* In such cases an additional witness, or such circumstances as are equivalent thereto, is held to be requisite to turn the scale, and induce a chancellor to make a decree : Brawdy *v.* Brawdy, 7 Barr 159 ; Eberly *v.* Graeff, 9 Harris 256 ; Greenlee *v.* Greenlee, 10 Id. 236. It is, however, considerably shaken by others cited below, and is believed to be untenable on principle.

It is a recognised principle of equity practice, that when an answer negatives the allegations it contains, and no further testimony is adduced in its support, the court will dismiss it, as of course. This is analogous to the *declaration* and *plea* at law. In the latter case, there is allegation and denial ; the parties stand *in equilibrio,* and the testimony of a single witness will decide the issue on either side. In the former, there is also allegation and denial, but in each under oath, and, therefore, on principles of strict reasoning, a like equilibrium should result, and the testimony of a single disinterested witness, sustaining the allegations of the bill, should be sufficient to turn the scale. Otherwise we are compelled to adopt the anomalous doctrine, that at law one witness is sufficient, but in equity, two are required. The rule now in force in England, of allowing both parties to a suit at law to testify, and in which, where they negatived each others' testimony, the oath of a single disinterested and credible witness would prevail, is believed to furnish the true doctrine of equity practice in this respect, and this would seem to be the doctrine laid down in Brightly's Equity, § 720 : Horton's Appeal, 1 Harris 71 ; Baker *v.* Williamson, 4 Barr 468. See also 1 Blackford 290 ; 16 Geo. Rep. 416 ; 9 Cranch 160 ; 4 Engel (Arkansas) Rep. 545-6.

The fact that the second witness to the assignment has no recollection of Susan Hassler being present at the time it was executed—the respondent being an uncle to one of the *cestuis que trust*—his failure to remember whether the purchase-money was refunded to him *before* or *after* the declaration of trust was executed—the delivery of the deed, with the trust thereon endorsed, to the complainant, instead of depositing it in the custody of a disinterested person, and its being still in her possession and unrecorded, afford strong evidence that the true history of the transaction is as alleged in the complainant's bill.

But, another consideration may be urged. In a resulting trust, can the trustee execute a conveyance of the legal title to persons other than the *cestui que trust,* without the authority of the latter in writing, or proof of such authority, if denied by evidence outside of his own declaration ? If this doctrine should be adopted, it is easy to see that every *cestui que trust* must be at

the mercy of the trustee, for to divert the trust estate all that is necessary would be to make a declaration of trust to that effect, and allege that it was done in obedience to the directions of the beneficiary.

But grant that the direction to convey is evidenced by the assignment endorsed on the deed, and that after its execution the instrument was delivered to and accepted by Susan Hassler, is there anything in these acts that bars her right to revoke the trust in remainder? As a trustee, Daniel L. Bitting was bound to convey according to the *cestui que trust's* direction, and if the conveyance had been made to her in fee, and she had thereupon executed a declaration of trust, but retained the writing in her possession and under her control, a power of revocation existed. No difference in principle is perceived between the case supposed, and the one under consideration. They are both substantially the act of Susan Hassler; in neither case is the control of the deed parted with, or the trust in remainder consummated by delivery: Maynard *v.* Maynard, 10 Mass. 456; Eames *v.* Phillippi, 12 Johns. 418; Stilwell *v.* Hubbard, 20 Wend. 44. Nor can delivery to the complainant be held to be a delivery to the others named in the assignment. To accept the deed, under those circumstances, was probably the only way in which the trustees would consent to part with the title, and the fact of not recording it, and keeping it entirely under her control, was evidence of an intention to retain the power to revoke. The respondent declares in his answer, that the complainant put the deed into the hands of Jeremiah D. Bitting for safe keeping; but as this was not responsive to anything alleged in the bill, it would be no evidence, unless supported *aliunde*. Even if evidence in the cause, which it certainly is against the respondent, it shows no delivery. It was left with Jeremiah D. Bitting for a specific object, viz.: *for safe keeping*, and liable to reclamation at the will and pleasure of the complainant. Having been put in a place of deposit merely for secure custody, it did not pass out of her possession or control. This was also the understanding of the bailee, for if the fact is as the respondent alleges, the deed was redelivered to her, as it was in her possession at the time of her death. The case of Simonton's Estate, 4 Watts 180, does not apply, for there innocent parties were to be affected. To the same effect is Blight *v.* Schenck, 10 Barr 285. In the present case, there was no change in the *status* of the parties, nor is there any pretence that either of those named in remainder paid any consideration for, or ever had any possession of the property in question, or expended any money on the faith of the assignment, or would sustain any legal injury by the cancellation of said declaration of trust. Cases can be found in which a delivery has been held without an actual delivery of the deed.

[Hassler v. Bitting.]

But, in those instances, it will be found that no revocation took place in the lifetime of the grantor, whereas, in this case, it was doubly revoked; first, by the bill in equity, and again by the last will and testament of complainant.

*John Banks*, for appellee.—The defendant's answer in express terms negatives every allegation in the bill.    This answer being responsive to the allegations in the bill, is evidence in his favour; and is conclusive, unless overcome by the satisfactory evidence of two opposing witnesses, or of one witness corroborated by other circumstances and facts which give to it a greater weight than the answer, or which are equivalent in weight to a second witness.    This has not been done.

The testimony of Mr. Richards does not by any means sustain the allegations in the bill.    It does not establish the fact that the property was purchased for her, and paid for with her money; nor prove that the assignment was not made according to her wishes and directions; but only that the directions were given by Bitting, and that the complainant was not present. This proof, if made by two witnesses, would not be sufficient to warrant the decree asked for.

Isaac Myers proves no fact or circumstance connected with the case, except his signature to the assignment.    This cannot give weight in the complainant's case greater than the answer; and is not equivalent to the required testimony of a second witness.

According to the rules of law cited by the appellant, their case is not made out: 2 Story Eq. § 1528; Brightly's Equity, § 720; Smith *v.* Brush, 1 Johns. Ch. R. 461.

In addition to our answer, and the insufficiency of the complainant's testimony, we have the positive proof of one witness, that the complainant said, that she had the assignment made as it is written.    That she had requested it to be drawn as it is, and that she was satisfied with it.

There is nothing like a resulting trust here.    Bitting bought the property, and took a deed in his own name.    The complainant had no interest in it, either in absolute right or resulting trust.    She afterwards agreed to take it, and the defendant agreed to convey it for a particular purpose.    This was an original purchase, independent of his.    When he conveyed as the complainant agreed, nothing remained in him.    He had no title, either legal or equitable.    Nothing remained in him, in trust or any other way.

This being the case, how can the defendant be called upon to make another deed that is different from the one he agreed to make, and did make, and the complainant agreed to receive, and

did receive? The defendant has nothing more to do with the property. He has no interest in it that he can convey. Can she cancel the deed that was made to her as she desired and directed? She took the deed in that way. The title vested according to its terms. It was delivered to her, and received by her for the purposes set forth in it, not as an escrow, but absolutely. This made it valid as to the defendant, and as such he delivered it. It required no further delivery, and did not admit of any other. By this it became valid in all its parts, and for all its purposes. The defendant could not alter it, nor could the complainant give him power to alter it. The destiny of the property was fixed and remains. The complainant received this deed for all the purposes contained in it. She received it for all the parties named in it, and it is valid as to them all, and for them all. She has no power to revoke it. If she has, and has exercised that power, why call on the court to revoke it? That is a matter with which the defendant has no concern.

The opinion of the court was delivered, July 24th 1861, by

Strong, J.—The fundamental difficulty in the complainant's case is, that proof of a resulting trust in her favour is entirely wanting. The bill alleges, indeed, that the defendant purchased the property with the complainant's money, but this allegation is denied by the answer, and there is no evidence to sustain the averment of the bill. We have then nothing to show, either in the bill and answer or in the proofs, that any trust ever existed, or that the relation between the parties was at first anything else than that of vendor and vendee.

This alone disposes of the case. But if it did not, if on the 14th of December 1833, the complainant had an equitable right to have the property conveyed to her in fee simple, and without any trust in favour of others, it by no means follows that such an equity can be enforced now. On that day by an assignment written on the deed to the defendant, he conveyed the house and lot to the complainant for life, with remainder to three others in fee. She knew of the assignment, when it was made. Her bill avers, it is true, that it was thus made without her consent, and that she remonstrated, but was informed that she could at any time have it changed in favour of such person as she desired, and requested to let it remain as a temporary arrangement. This averment is denied in the answer, and there is very little proof to sustain it. If it be conceded, however, the strong facts remain that she knew of the assignment, and knew its contents in 1833, that she received it with the deed of Mr. Bitting, and has, by herself or her bailee, retained it until the present time. Her bill was not filed until 1857. If she ever had the equity which she

[Hassler *v.* Bitting.]

claims, it must be admitted, that she has been guilty of great *laches* in endeavouring to enforce it. After twenty-four years' delay it seems to us she cannot be heard in a court of equity, asserting a resulting trust, no better proved than this, or a breach of trust in a conveyance in which she has so long acquiesced.

The decree is affirmed with costs.